FRIEMOTH, Admr., Appellant,

v.

FRUEHAUF TRAILER CORPORATION et al.; Travelers
Indemnity Insurance Company of Illinois, Appellee.

[Cite as *Friemoth v. Fruehauf Trailer Corp.*, 146 Ohio App.3d 519, 2001-Ohio-2172.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–2000–78.

Decided March 15, 2001.

520

Kevin J. Boissoneault and Brian J. Judis, for appellant.
David W. Mellot and Edward J. Stoll, Jr., for appellee.

SHAW, Judge.

{¶ 1} Nancy J. Friemoth, Administrator of the estate of Robert W. Friemoth, appeals the October 2, 2000 judgment of the Allen County Court of Common Pleas granting summary judgment on her claim for declaratory relief to appellee Travelers Indemnity Insurance Company of Illinois.

{¶ 2} On September 2, 1998, appellant filed a complaint in the Allen County Court of Common Pleas, alleging that her husband Robert W. Friemoth had been killed in the course and scope of his employment for Fruehauf Trailer Corporation ("Fruehauf"). Appellant's complaint alleged that Mr. Friemoth had been killed by the continued use of an automated overhead assembly line that Fruehauf knew was substantially certain to cause harm to its employees.

{¶ 3} On August 8, 1996, Fruehauf had received a revised "binder of insurance" from appellee. The binder provided Fruehauf with temporary insurance coverage for automobile, general commercial liability, and worker's compensation claims until appellee's insurance policy was prepared and delivered to Fruehauf. The binder did not contain language describing its specific coverages or exclusions, but did contain the following clauses:

{¶ 4} "This Company binds the kind(s) of insurance stipulated on the first page of this form. The Insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company. * * * This binder may be cancelled by the Company by notice to the insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy."

{¶ 5} On September 4, 1996, prior to the delivery of insurance policy to Fruehauf, Mr. Friemoth was killed at Fruehauf's Delphos plant. On September 11, 1996, appellee issued a commercial general liability policy including several endorsements to Fruehauf. The main policy contains the following exclusions:

{¶ 6} "COMMERCIAL GENERAL LIABILITY COVERAGE FORM

{¶ 7} "* * *

{¶ 8} "SECTION I—COVERAGES

{¶ 9} "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

{¶ 10} "* * *

{¶ 11} "2. Exclusions

{¶ 12} "This insurance does not apply to:

{¶ 13} "a. Expected or Intended Injury

{¶ 14}  " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured.  This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

{¶ 15}  "* * *

{¶ 16}  "e.  Employer's liability

{¶ 17}  " 'Bodily injury' to:

{¶ 18}  "(1) An 'employee' of the insured arising out of and in the course of:

{¶ 19}  "(a) Employment by the insured;  or

{¶ 20}  "(b) Performing duties related to the conduct of the insured's business[.]"

{¶ 21}  One of the several endorsements issued as part of the general policy reads:

{¶ 22}  "This endorsement modifies insurance provided under the following:

{¶ 23}  "COMMERCIAL GENERAL LIABILITY COVERAGE PART B. PROVISIONS

{¶ 24}  "The following provisions apply to SECTION I—COVERAGE A.— with respect to 'bodily injury' included within the 'employer's liability hazard'

{¶ 25}  "1.  The exclusions in paragraph 2 of SECTION I–COVERAGE A. are replaced by the following:

{¶ 26}  "This insurance does not apply to:

{¶ 27}  "* * *

{¶ 28}  "e.  'Bodily injury' intentionally caused or aggravated by you, or 'bodily injury' resulting from an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur[.]"

{¶ 29}  On August 3, 1999, after receiving notice that Fruehauf had gone into bankruptcy, appellant amended her complaint to implead the appellee and sought a declaration that based on its insurance policy with Fruehauf, appellee was contractually obligated to defend and indemnify Fruehauf on her claim.  On September 16, 1999, appellee filed a motion for summary judgment, arguing that the coverage it extended to Fruehauf excluded liability for bodily harm to employees that was substantially certain to occur.  On October 2, 2000, the trial court granted summary judgment in favor of the appellee, and on October 27, 2000, the trial court journalized a nunc pro tunc entry adding Civ.R. 54(B) language to its summary judgment order.  This appeal followed, and appellant asserts a single assignment of error with the trial court's judgment.

{¶ 30} "The trial court erred as a matter of law when it granted the summary judgment motion of defendant appellant Travelers Indemnity Company of Illinois."

{¶ 31} Appellate courts review summary judgment determinations de novo and do not grant deference to the trial court's determination. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388. Accordingly, we apply the same standard for summary judgment as the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411.

{¶ 32} "[Summary judgment is proper] when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, citing Civ.R. 56(C).

{¶ 33} Furthermore, in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, the Ohio Supreme Court held that parties seeking summary judgment must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." If the moving party satisfies that burden, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial," and summary judgment is proper if the party opposing judgment fails to set forth such facts. Id., citing Civ.R. 56(E).

{¶ 34} It is apparently undisputed that the previously quoted endorsement, which was contained in the policy issued by appellant on September 11, 1996, effectively eliminated coverage for bodily injury "substantially certain" to occur. Cf. *Maffett v. Moyer's Auto Wrecking, Inc.* (June 7, 2000), Crawford App. Nos. 3–99–11 and 3–99–12, 2000 WL 743707, at ** 3–4. In her assignment of error, appellant advances two arguments to persuade us that the insurance binder issued to Fruehauf on August 8, 1996 provided independent coverage for injury "substantially certain" to occur, even though the actual insurance policy issued to replace that binder did not provide such coverage.

{¶ 35} At the outset, appellant correctly asserts that the binder constituted a temporary contract of insurance effective at the time appellant's decedent was killed. Cf. e.g., *Clements v. Ohio State Life Ins. Co.* (1986), 33 Ohio App.3d 80, 85, 514 N.E.2d 876, cited in *Hastings Mut. Ins. v. Warnimont* (Feb. 15, 2001), Hancock App. No. 5–2000–22, 2001 WL 163523, at * 5. "A contract for temporary

insurance is construed as being *subject to the terms of the policy to be issued or of the policy ordinarily used* by the company." (Emphasis added.) 44 Corpus Juris Secundum (1993) 496, Insurance, Section 267(a). Noting the general maxim that " '[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured,' " see *Csulik v. Nationwide Mut. Ins. Co.* (2000), 88 Ohio St.3d 17, 20, 723 N.E.2d 90, quoting *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus, appellant argues that that the binder was ambiguous regarding the extent of coverage in two distinct ways.

{¶ 36} First, appellant contends that the phrase "subject to the terms, conditions and limitations of the *policy(ies) in current use* by the Company" is ambiguous. (Emphasis added.) Appellant argues that there is no standard policy to which the phrase can refer, because "[a]ppellee Travelers issues numerous policies of varying nature, many of which are general policies 'customized by account[.]' " Appellee, on the other hand, argues that the provision was clearly intended to integrate the terms of the policy that was ultimately issued.

{¶ 37} Under *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264, it is the appellant's reciprocal burden to establish that appellee's "policy(ies) in current use" provide coverage for injury substantially certain to occur. However, the only written policy placed into evidence in this case is the Fruehauf policy itself, which specifically excludes liability for harm "substantially certain" to occur, and appellant has not attempted to show what terms of coverage are contained in other "policy(ies) in current use" by appellee. Instead, appellant notes that the language excluding liability for harm that is "substantially certain" appears in a portion of the policy labeled "endorsement" rather than in the portion labeled "bodily injury and property damage liability," and argues that this fact alone proves that appellee must have a "policy[ ] in current use" that does not exclude coverage for harm that is "substantially certain" to occur.

{¶ 38} Appellant is undoubtedly correct in asserting that both the policy and the endorsement are "in current use"; however, appellant has failed to provide any evidence tending to show that the policy was "in current use" *without* the endorsement. Similarly, appellant has not provided this court with authority indicating that merely labeling a provision an "endorsement" creates an ambiguity as to the extent of coverage that must be resolved in favor of a claimant, and our own research has failed to uncover any case adopting this rule.

{¶ 39} Moreover, appellant has failed to offer *any* evidence that the parties to the insurance contract intended bodily injury "substantially certain" to occur to be covered under the policy. " '[A]ll ordinary provisions and exclusions of policies issued to cover similar risks will be read into the temporary binder,

*unless there was an express agreement at the time of the issuance of the binder which would make such provisions and exclusions inconsistent with the intent of the binder agreement.'"* (Emphasis added.) *N. Am. Specialty Ins. Co. v. Myers* (C.A.6, 1997), 111 F.3d 1273, 1278, quoting *Harmon v. Am. Interinsurance Exchange Co.* (1972) 39 Mich.App. 145, 197 N.W.2d 307.

{¶ 40}  Where there is no fraud alleged or implied and where the only written insurance policy in evidence clearly excludes coverage for the harm alleged, as in this case, we believe that the only reasonable construction of the language is the one advanced by appellee—the language was intended to provide coverage in accordance with and was intended to incorporate the terms of the policy ultimately issued. "The relation of the preliminary and final contracts seems rather clearly established and it is not improper to construe them together." *Schaible v. Louisville Title Ins. Co.* (1963), 118 Ohio App. 328, 334, 25 O.O.2d 190, 194 N.E.2d 588. See, also, *Jaber v. Prudential Ins. Co. of Am.* (1996), 113 Ohio App.3d 507, 512, 681 N.E.2d 478, quoting *Wilson v. GRE Ins. Co.* (Sept. 16, 1994), Lucas App. No. L–93–361, 1994 WL 506154, at * 2 (holding that "a binder incorporates 'the terms, conditions and limitations of the policy(ies)' used by the insurer").

{¶ 41}  In her second argument, appellant observes that the "schedule of insurance" attached to the binder lists "Stop Gap Employers Liability coverage," and argues that the failure of the binder to define this term creates an ambiguity that must be resolved in her favor. In support of this argument appellant offers the affidavit of Corey Hupp, an insurance agent. Hupp averred:

{¶ 42}  "The purpose of the inclusion of 'Stop Gap Employers Liability' coverage in such a policy is to provide coverage for the insurance coverage gap that exists in the State of Ohio between those losses covered by general liability coverage and those losses covered by Workers' Compensation, including employment intentional tort claims."

{¶ 43}  Based on Hupp's affidavit, appellant argues that the parties intended for the binder to provide coverage for injuries "substantially certain" to occur. However, it is undisputed that the policy ultimately issued *did not* contain "Stop Gap" coverage as described by Mr. Hupp and expressly excluded coverage for injury substantially certain to occur. Moreover, the "schedule of insurance," which is the only insurance document in the record that contains a reference to "Stop Gap" coverage, also contains the following paragraph, printed in bold type:

{¶ 44}  "This schedule of insurance is for information purposes only. It does not alter, amend, or change your coverage. Please refer to specific policies for limits, terms, conditions and exclusions."

{¶ 45} It is "only where a contract of insurance is ambiguous and *therefore susceptible to more than one meaning* [that] the policy language [must] be liberally construed in favor of the claimant who seeks coverage." (Emphasis added.) *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, overruled on other grounds by *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 504, 620 N.E.2d 809. "[w]here the plain and ordinary meaning of the language used in an insurance policy is clear and unambiguous, a court cannot resort to construction of that language." *Holliman v. Allstate Ins. Co.* (1999), 86 Ohio St.3d 414, 418, 715 N.E.2d 532, citing *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716. We cannot say that the foregoing provision is ambiguous in any way. Therefore, appellant's argument that the binder alone extends "Stop Gap" insurance must fail.

{¶ 46} For these reasons, the appellant's sole assignment of error is overruled, and the judgment of the Court of Common Pleas of Allen County is affirmed.

*Judgment affirmed.*

WALTERS, P.J., and HADLEY, J., concur.